UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNIFER KEIPPEL, <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] <br><br> Defendant. | No. 17 C 4394 <br><br> Magistrate Judge Mary M. Rowland |

# MEMORANDUM OPINION AND ORDER

Plaintiff Jennifer Keippel filed this action seeking reversal of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) under Title II and Supplemental Security Income (SSI) under Title XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C § 636(c), and filed cross motions for summary judgment. This Court has jurisdiction pursuant to 42 U.S.C. § 1383(c) and 405(g). For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

---

[1] Nancy A. Berryhill has been substituted for her predecessor, Carolyn W. Colvin, as the proper defendant in this action. Fed. R. Civ. P. 25(d).

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI benefits on July 25, 2013, alleging that she became disabled on March 31, 2011. (R. at 206, 213). These claims were denied both initially on January 14, 2014, and upon reconsideration on December 16, 2014. (*Id.* at 115, 126). Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ) on February 10, 2015. (*Id.* at 37–73). The ALJ also heard testimony from James Radke, a vocational expert (VE). (*Id.*). Plaintiff's counsel was also present at the hearing. (*Id.*). Following the hearing, additional records were entered into the administrative record. (*Id.*). The ALJ denied Plaintiff's request for DIB and SSI on April 26, 2016. (R. at 17–31).

Applying the five-step evaluation process, the ALJ found, at step one, that Plaintiff engaged in substantial gainful activity from June 2015 to November 2015, but that there has been a continuous 12-month period during which she did not engage in substantial gainful activity. (R. at 22). The remaining steps address the periods during which Plaintiff did not engage in substantial gainful activity. (*Id.*). At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease with radiculopathy, bilateral tarsal tunnel syndrome, mood disorder, and bipolar disorder. (*Id.* at 23). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listings enumerated in the regulation. (*Id.*).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC) and determined that Plaintiff has the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except she is able to do the following:

> Frequently climb ramps, stairs, ladders, ropes and scaffolds, but only occasionally stoop, kneel, crouch and crawl. She is able to understand, remember and carry out simple, routine and repetitive tasks. She can use judgment to make simple work related decisions and frequently interact with supervisors, co-workers and the public.

(R. at 25). The ALJ determined at step four that Plaintiff is unable to perform any past relevant work. (*Id.* at 29). Based on Plaintiff's RFC, age, education, work experience, and the VE's testimony that Plaintiff is capable of performing work as a cleaner, mail clerk, and handpacker, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.* at 30–31). Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined by the Act, from the alleged onset date of March 31, 2011, through the date of the ALJ's decision. (*Id.*).

On April 17, 2017, the Appeals Council denied Plaintiff's request for review. (R. at 1–6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

A Court reviewing the Commissioner's final decision may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor

3

may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v.*

4

*Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

### III. DISCUSSION

Plaintiff makes a number of arguments challenging the ALJ's decision. After reviewing the record and the parties' briefs, the Court is convinced by Plaintiff's argument that the ALJ erred in evaluating the medical opinions of Plaintiff's treating psychiatrist.

The opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2); *accord Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). A treating physician typically has a better opportunity to judge a claimant's limitations than a non-treating physician. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); *Grindle v. Sullivan*, 774 F. Supp. 1501, 1507–08 (N.D. Ill. 1991). "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Therefore, an ALJ "must offer 'good reasons' for discounting a treating physician's opinion," and "can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Campbell v. Astrue*, 627

F.3d 299, 306 (7th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(2); other citation omitted).

If a treating physician's opinion is not given controlling weight, an ALJ must still determine what value the assessment *does* merit. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Campbell*, 627 F.3d at 308. In making that determination, the regulations require the ALJ to consider a variety of factors, including: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)–(6). The ALJ must then provide a "sound explanation" for that decision. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

Here, the ALJ improperly discounted the opinions of Mary Ellen Walsh, M.D. Dr. Walsh is Plaintiff's treating psychiatrist and treated Plaintiff from May 10, 2013 to February 10, 2016. (*See* R. 305, 348, 710). Dr. Walsh gave two statements regarding Plaintiff's conditions– one in 2013 and one in 2016.[2] The Court finds that the reasons the ALJ offered for discounting the second opinion of Dr. Walsh are not supported by substantial evidence. The Court will address each statement in turn.

---

[2] Plaintiff argues that the ALJ mistakenly evaluated Dr. Walsh's two opinions as if issued by two different physicians, based on the ALJ's misspelling of Dr. Walsh's name. (Pl.'s Mem., Dkt 11 at 9). The Court is not convinced that this is anything other than a typographical error.

6

In her three-sentence statement dated August 16, 2013, Dr. Walsh gave Plaintiff "a working diagnosis" of Mood Disorder, Not Otherwise Specified with a rule out diagnosis of Bipolar Disorder, and concluded that Plaintiff was unable to work due to her mental illness. (R. at 305). The ALJ gave "little weight" to this August 2013 statement because: 1) Dr. Walsh did not give an explanation for the basis of her opinion; 2) it is not known if Dr. Walsh was familiar with the definition of disability contained in the Social Security Act and regulations; and 3) Dr. Walsh's opinion that Plaintiff was unable to work is an issue reserved for the Commissioner. (R. at 28). An ALJ is not required to accept a treating physician's opinion if it is "brief, conclusory, and inadequately supported by clinical findings." *Gildon v. Astrue*, 260 Fed. Appx. 927 (7th Cir. 2008) (internal quotation omitted). Further, "the ALJ is not required to give controlling weight to the ultimate conclusion of disability –a finding specifically reserved for the Commissioner." *Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010) (*citing* 20 C.F.R. § 404.1527 (e)(1)). The 2013 statement contained only a "working diagnosis" of Plaintiff's condition and did not include any reasons why Dr. Walsh concluded that Plaintiff was unable work. Thus, the Court finds that the ALJ did not err when she gave "little weight" to Dr. Walsh's 2013 statement.

The same cannot be said for the ALJ's handling of Dr. Walsh's second medical opinion, a Medical Impairment Report, dated February 10, 2016. In this opinion, Dr. Walsh diagnosed Plaintiff with Bipolar Disorder and Anxiety Disorder Not Otherwise Specified. (R. at 710). The doctor indicated that she had been treating Plaintiff for two years and eight months. (*Id.*). Dr. Walsh opined that Plaintiff's

7

mental illness restricted her daily activities and impacted her ability to sustain concentration and attention long enough to complete tasks. (*Id.* at 710–11). Dr. Walsh also stated that she noticed both depressive syndrome (manifesting eight of nine symptoms) and manic syndrome (manifesting six of eight symptoms) during her treatment of Plaintiff. (*Id.* at 712). Finally, Dr. Walsh concluded that Plaintiff had moderate restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, and repeated episodes of decompensation of extended duration. (*Id.*).

The ALJ gave partial weight to Dr. Walsh's February 2016 mental impairment report because: 1) the report was not consistent with Dr. Walsh's therapy notes, which the ALJ claims showed no significant problems with social functioning or attention and concentration; 2) Dr. Walsh noted that Plaintiff was able to attend and perform her self-care adequately and could take medications independently; and 3) there were no episodes of decompensation of an extended duration. (*Id.*). There are several errors in the ALJ's analysis, warranting remand on this issue.

First, the ALJ maintains that Dr. Walsh's therapy notes showed no significant problems with social functioning or attention and concentration, despite her mental impairment report stating that she had marked difficulties in both social functioning and maintaining concentration, persistence, or pace. (R. at 28). However, the ALJ does not discuss *where* the discrepancies are in Dr. Walsh's notes or cite to any examples of such inconsistencies. Nor does the ALJ discuss areas in

8

which Dr. Walsh's therapy notes corroborate her findings in the mental impairment report. Indeed, the ALJ ignored evidence including psychiatric evaluations, treatment plans, and progress notes that supported Dr. Walsh's findings. *See e.g.* (R. at 344–353, 355–360, 363–365, 368–370, 374–376, 399–401, 403–419, 526–533, 537–38, 540, 543–34, 549, 559–60, 572–73, 579). These notes indicate the presence of the following symptoms that the ALJ failed to discuss: problems with her family relationships, racing thoughts, anger, agoraphobia, being mistrustful of people, moodiness, weepiness, depression, irritability, varying moods, anxiety, thoughts of people out to get her, paranoid thoughts about police, sadness, and tangential thoughts. (*Id.*). The Court finds the ALJ erred by failing to address supportive evidence from Dr. Walsh's own treatment notes, corroborating her assessment. *See Scrogham*, 765 F.3d at 697 (finding the ALJ erred when she "neither considered nor explained her decision not to consider the rest of [a treating physician's] copious records, which, upon closer review, might indicate that [claimant] was substantially more limited in his physical abilities than the ALJ initially concluded.").

Second, the ALJ discounted Dr. Walsh's 2016 opinion because the Plaintiff "was able to attend and perform her self-care adequately and take her medications independently." (R at 28). As an initial matter, there are session notes from Dr. Walsh indicating that Plaintiff was unable to adequately perform her self-care that the ALJ failed to address. (*Id.* at 537, 548, 559, 572). An ALJ "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability." *Denton*, 596 F.3d at 425. Moreover, the ALJ failed to explain

9

*how* Plaintiff's ability to perform basic self-care or take medications independently contradicts Dr. Walsh's characterization of her limitations and impairments. *See Clifford v. Apfel*, 227 F. 3d 863, 871 (7th Cir. 2000) (finding that the ALJ did not provide any explanation for his belief that the claimant's activities were inconsistent with the treating physician's opinion and his failure to do so constitutes error). Nor did the ALJ explain how Plaintiff's ability to perform basic self-care equates with an ability to perform full time work. Plaintiff's ability to attend to basic self-care "says little about her ability to perform the tasks of a full-time job." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). Courts have "repeatedly cautioned against equating daily living activities with the ability to perform a full day of work, as the former are often subject to different restraints . . . and at times can be avoided only at great personal cost." *Brown v. Colvin,* 845 F.3d 247, 253 (7th Cir. 2016).

Third, the ALJ discounted Dr. Walsh's 2016 opinion because there were "no episodes of decompensation of an extended duration." (R. at 28). However, the ALJ did not provide any evidence to support this statement. Once again, the ALJ failed to consider evidence which supports Dr. Walsh's conclusion of episodes of decompensation. For instance, Plaintiff was hospitalized for suicidal ideation in July of 2015, which the Seventh Circuit has found qualifies as an episode of decompensation. (R. at 535–36); *see Larson v. Astrue*, 615 F.3d 744, 750 (7th Cir. 2010) (finding that a hospital trip for suicidal thinking qualified as an episode of decompensation) (*citing* 20 C.F.R. § Pt. 404, Subpart P. App. 1, § 12.00). Further, an

episode of decompensation "may be inferred from medical records showing a significant alteration in medication." *Larson*, 615 F.3d at 750 (7th Cir. 2010) (*citing* 20 C.F.R. § Pt. 404, Subpart P. App. 1, § 12.00). Plaintiff's progress notes show at least four medication changes, which the ALJ did not mention. (R. at 357, 370, 400, 409). The ALJ erred by both failing to substantiate her claim that Plaintiff had no episodes of decompensation and failing to consider evidence that corroborates the treating psychiatrist's opinion.

Fourth, although the ALJ is entitled to not accord controlling weight to Dr. Walsh's opinions, she still must address the factors listed in 20 C.F.R. § 404.1527 to determine what weight to give the opinions. SSR 96-2p. SSR 92-2p states that treating source medical opinions "are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." (*Id.*). Here, the ALJ failed to minimally address several of the enumerated factors provided in 20 C.F.R. § 404.1527 for either the 2013 report or the 2016 report. Specifically, the ALJ did not discuss the nature and extent of the treatment relationship, the frequency of examination, or whether Dr. Walsh had a relevant specialty. The ALJ must "sufficiently account [ ] for the factors in 20 C.F.R. 404.1527." *Schreiber v. Colvin*, 519 Fed. Appx. 951, 959 (7th Cir. 2013) (unpublished decision). The ALJ did not do so here, preventing this Court from assessing the reasonableness of the ALJ's decision in light of the factors indicated in 20 C.F.R. § 404.1527.

In sum, the Court finds that the ALJ did not offer substantial evidence for rejecting the 2016 opinion of Dr. Walsh, which is an error requiring remand.[3] On remand, the ALJ shall properly consider and weigh treating physician opinions, the testimony of Plaintiff, then reevaluate Plaintiff's impairments and RFC, considering all of the evidence and testimony of record and shall explain the basis of her findings in accordance with applicable regulations and rulings. With the assistance of a VE, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff can perform.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's request to remand for additional proceedings [10] is **GRANTED**, and the Commissioner's motion for summary judgment [14] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: June 25, 2018

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge

---

[3] Because the Court remands for this reason, it does not address Plaintiff's other arguments at this time.